IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NANCY D. ECKERT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | CASE NO. 3:03-0523 |
| v. ) | JUDGE CAMPBELL/KNOWLES |
| ) | |
| ) | |
| JILLIAN'S OF NASHVILLE, TN, INC., and ) | |
| JILLIAN'S ENTERTAINMENT CORP., ) | |
| JILLIAN'S ENTERTAINMENT HOLDINGS, ) | |
| INC., aka "JILLIAN'S" ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

**I. Introduction and Background**

This matter is before the Court upon Defendants' Motion for Summary Judgment. Docket Entry No. 32. Along with that Motion, Defendants have contemporaneously submitted a supporting Memorandum of Law (Docket Entry No. 33), a Statement of Undisputed Facts (Docket Entry No. 34), and Excerpts from the Deposition of Nancy Eckert ("Plaintiff's Dep.") with Exhibits (Docket Entry No. 35).

Plaintiff has responded to Defendants' Motion and Statement of Undisputed Facts. Docket Entry Nos. 43-45.

Plaintiff filed this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title

1

VII"), 42 U.S.C. § 2000e *et seq.* and the Equal Pay Act, 429 U.S.C. § 206(d), on June 11, 2003,[1] alleging employment discrimination based upon her gender. Docket Entry No. 1. Specifically, Plaintiff avers that, because of her gender, she was paid less than a male subordinate and her employment was terminated. *Id.*

Defendants filed an Answer denying liability on July 14, 2003. Docket Entry No. 4.

Defendants filed the instant Motion for Summary Judgment and accompanying submissions on July 14, 2006. Docket Entry Nos. 32-35. Defendants state that they dispute that Plaintiff can establish her prima facie claim, although they do not explain this argument in detail. Their primary argument is that, "the undisputed facts demonstrate that Jillian's had a legitimate, non-discriminatory reason for terminating [Plaintiff]: as Manager, her store's performance scores routinely ranked at or near the lowest in the entire country." Docket Entry No. 33. Defendants further argue, "Jillian's can articulate a legitimate, non-discriminatory reason for the salary discrepancy with the male counterpart - he was training for a Manager's position in a city with a much higher cost of living than where [Plaintiff] worked." *Id.*

In her Response and supporting Memorandum, Plaintiff disputes Defendants' articulated reasons for her termination and for the salary differential. Docket Entry Nos. 43-44. She does so, however, solely via argument, and she has not appropriately cited to the record or submitted *any* evidence in a form required by Fed. R. Civ. P. 56 to support her claims.

For the reasons set forth below, the undersigned recommends that Defendants' Motion for Summary Judgment be GRANTED.

---

[1] On May 26, 2004, Defendants filed a Bankruptcy Petition, which effectively stayed the instant action. *See* Docket Entry Nos. 17-20. Plaintiff reopened her lawsuit against Defendants in this Court on June 7, 2005. *See* Docket Entry No. 21.

2

## II. Undisputed Facts[2]

Defendants opened the Nashville, Tennessee location in the Spring of 2000. Plaintiff's Dep., pp. 91-92. As part of the initial workforce, Defendants hired Plaintiff to be an Assistant Unit Manager. *Id.* Plaintiff's initial area of management was over the "Groove Shack" dance club. *Id.*, pp. 94-95. Plaintiff worked in that capacity for almost one year. *Id.*, p. 116.

Plaintiff was promoted to Assistant General Manager in April, 2001. Plaintiff's Dep., p. 116. Plaintiff was the Assistant General Manager of "Eat," the food service sector of the restaurant. *Id.*, p. 119. Other Assistant General Managers supervised "Drink" (beverages) and "Play" (gaming). *Id.* As the Assistant General Manager of "Eat," Plaintiff was in charge of "anybody having to do with anything with food." *Id.* Before being promoted to Assistant General Manager, Plaintiff was required to "cook a meal" at the Hibachi grill. *Id.*, p. 240. No other employee, whether male or female, was required to demonstrate proficiency on the Hibachi grill. *Id.*, p. 242.

In July, 2001, the Nashville location's General Manager, Robin Grenko, was transferred to become a Regional Manager. Plaintiff's Dep., p. 121. Plaintiff applied for, and was hired into, the newly-opened General Manager position. *Id.* Some of the "Essential Duties and Responsibilities" of the General Manager position were: "Directly responsible for all club operations," "Promote positive guest relations at all times," "Interact with guests and confer frequently with staff to ensure guest satisfaction," "Ensure that all staff members have assistance with their job functions to ensure optimum services to guests," and "Fully responsible for

---

[2]Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed. Specifically, the following facts are taken from Plaintiff's Deposition and Exhibits thereto.

3

comparable sales growth of entire property." *Id.*, Ex. 19.

In February, 2002, a Property Feedback survey was conducted. Plaintiff's Dep., p. 142. A Property Feedback form was completed once per month by a member of upper management to assess the overall performance of a store. *Id.* The February, 2002 report scored the Nashville location at an overall 95 out of 100. *Id.*, Ex. 21.

Another Property Feedback survey was conducted in March, 2002. Plaintiff's Dep., p. 149. On this survey, the Nashville location received a score of 80 out of 100. *Id.*, Ex. 22. The lower score of 80 was a more typical reflection of the Nashville location. *Id.*, p.152.

Defendants compiled "Store Rankings" sheets that compared each individual store for customer satisfaction. Plaintiff's Dep., pp. 175-176. The Nashville location ranked as follows:

    April 2002:    28 out of 33.    *Id.*, Ex. 26.

    May 2002:    29 out of 35.    *Id.*, Ex. 27.

    June 2002:    28 out of 34.    *Id.*, Ex. 28.

    July 2002:    33 out of 35.    *Id.*, Ex. 29.

    August 2002:    27 out of 35.    *Id.*, Ex. 30.

In the aggregate from April 1, 2002, through July 31, 2002, the Nashville location ranked last out of all Defendants' locations. Plaintiff's Dep., pp. 190-191. During her July, 2002, quarterly review, Regional Manager Robin Grenko counseled Plaintiff about the poor scores and rankings. *Id.*, p. 197.

Plaintiff was terminated on September 3, 2002. Plaintiff's Dep., p. 229. Upon Plaintiff's termination, Defendants relocated another manager, Brian Griffin, from New York. *Id.*, p. 267. Mr. Griffin was already employed by Defendants before he moved to the Nashville location. *Id.*

4

Andrew Jackman was hired by Defendants to be trained to be a General Manager at another location. Plaintiff's Dep., p. 263. Defendants planned to transfer Mr. Jackman to another city once there was an opening. *Id.* Mr. Jackman's salary was set at $62,000 per year when he was hired. *Id.,* p. 262. Plaintiff's salary was $61,000. *Id.*

Frank Courreges and Randy Polster, two other males in the same position as Mr. Jackman, made $50,000 and $47,000 or $48,000 per year, respectively. Plaintiff's Dep., pp. 265-266.

### III.   Analysis

**A.  Motion for Summary Judgment**

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for Summary Judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**B. The Case at Bar**

Plaintiff avers that Defendants discriminated against her on account of her gender in violation of Title VII and the Equal Pay Act because she was paid less than a male subordinate and her employment was terminated. Docket Entry No. 1.

Title VII of the Civil Rights Act of 1964 ("Title VII") protects employees from discrimination on the basis of an individual's race, color, religion, sex, or national origin, and provides, in part:

> It shall be an unlawful employment practice for an employer--
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive

6

>     any individual of employment opportunities or otherwise adversely
>     affect his status as an employee, because of such individual's race,
>     color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

A plaintiff may establish a claim of discrimination under Title VII either by introducing direct evidence of discrimination, or by proving circumstantial evidence that would support an inference of discrimination. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000), *citing Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

If the plaintiff lacks direct evidence of discrimination, the circumstantial evidence approach is used and the *McDonnell Douglas-Burdine* tripartite test is employed. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), as later clarified by *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The *McDonnell Douglas-Burdine* tripartite test requires the plaintiff to first establish a prima facie case of discrimination. *Id.* If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id.* If the defendant does so, the plaintiff must then show that the proffered reason was actually pretextual. *Id.* The plaintiff may establish pretext by showing that, 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; or 3) the stated reasons were insufficient to explain the defendant's action. *Id. See also, Cicero v. Borg-Warner Automotive, Inc.,* 280 F.3d 579, 589 (6th Cir. 2002). "A reason cannot be proved to be 'a pretext for

discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

Once the plaintiff has established a prima facie claim and has introduced evidence of pretext such that the jury could reject the defendant's explanation, it is the province of the jury to weigh the evidence, draw all reasonable inferences therefrom, and make credibility determinations. *Reeves v. Sanderson Plumbing Prod. Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000). If a reasonable trier of fact could disbelieve the defendant's proffered reasons, then granting summary judgment would be inappropriate. *Id.*

With regard to her claim of discrimination under the Equal Pay Act ("EPA"), the EPA prohibits employers from paying an employee at a rate less than that paid to employees of the opposite sex for equal work. *See* 29 U.S.C. § 206(d)(1). "Equal work" does not require that the jobs be identical, only that there exist "substantial equality of skill, effort, responsibility and working conditions." *Odomes v. Nucare, Inc.,* 653 F.2d 246, 250 (6th Cir. 1981). Whether the work of two employees is substantially equal "must be resolved by an overall comparison of the work, not its individual segments." *Beck-Wilson v. Principi,* 441 F.3d 353, 362 (6th Cir. 2006).

Once a plaintiff establishes a *prima facie* case under the EPA, the burden shifts to the defendant to prove that the wage differential was justified under one of the affirmative defenses outlined in the statute. *Kovacevich v. Kent State Univ.,* 224 F.3d 806, 826 (6th Cir. 2000). The statutory affirmative defenses are: a seniority system, a merit system, a system which measures earnings by quantity of quality of production, or *any other factor other than sex. Id., citing* 29 U.S.C. § 206(d)(1) (emphasis added). The EPA's catch-all provision "does not include literally

8

*any* other factor, but a factor that, at a minimum, was adopted for a legitimate business reason." *EEOC v. J.C. Penney Co., Inc.*, 843 F.2d 249, 253 (6th Cir. 1988) (emphasis in original).

After a defendant successfully raises one of the statutory affirmative defenses, the burden returns to the plaintiff, who bears the burden of producing evidence creating a triable issue of fact that the reasons proffered by defendant were pretextual. *Balmer v. HCA,* 423 F.3d 606, 613 (6th Cir. 2005).

Although Plaintiff asserts that Defendants discriminated against her because of her gender, she has failed to adduce *any* affirmative evidence, in a form required by Fed. R. Civ. P. 56, to support those allegations. As discussed above, Plaintiff's Response does not appropriately cite to the record, nor has Plaintiff submitted *any* evidence in a form required by Fed. R. Civ. P. 56 to support her claims. It is Plaintiff's burden to cite to the record; the Court has no duty to search the record to determine whether there are material factual disputes. *Street v. J. C. Branford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Plaintiff bears the burden of demonstrating that there is a genuine issue for trial. Plaintiff has failed to do so.

For the purposes of the instant Motion, Defendants essentially agree that Plaintiff could establish a prima facie case of discrimination with regard to Plaintiff's termination, but they argue primarily that they have articulated a legitimate non-discriminatory reason for terminating Plaintiff, namely the performance of Plaintiff's store on consumer satisfaction surveys from April, 2002 through August, 2002. As discussed above, Plaintiff has come forward with no evidence in a form required by Fed. R. Civ. P. 56 to dispute the facts that the performance rankings for the store were dismal between April, 2002 and August, 2002, and that, in the aggregate from April 1, 2002 through July 31, 2002, the Nashville store ranked last out of all of

9

Defendants' locations.  Moreover, during her July, 2002 quarterly review, Regional Manager Robin Grenko counseled Plaintiff about the poor scores and rankings.  When the store showed no significant improvement in August, Plaintiff was terminated on September 3, 2002.

Under these circumstances, and on the basis of the undisputed facts in this case that are in a form required by Fed. R. Civ. P. 56, the undersigned concludes that no rational fact finder could conclude that Plaintiff's termination was discriminatory.  *See Reeves, supra,* 530 U.S. at 148 ("an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision....").

With regard to her claim under the EPA, it is undisputed that Andrew Jackman was hired to be trained to be a General Manager in another city and that his salary was $62,000, while Plaintiff's salary as a General Manager was $61,000.  Defendants state that Mr. Jackman was to be trained as a General Manager and transferred to another city once there was an opening, a factor based on something "other than sex" that was "adopted for a legitimate business reason."  Additionally, Frank Courreges and Randy Polster, "two other males in the same position as Mr. Jackman," made $50,000 and $47,000 or $48,000 per year, respectively.  Plaintiff has not adduced *any* evidence in a form required by Fed. R. Civ. P. 56 raising an inference of pretext.

In her Complaint, Plaintiff also alleged that she had been required to perform tasks not requested of male employees and that her Regional Manager made "pointed references" to her plans to become pregnant and the effect that might have upon her employment.  Docket Entry No. 1, p. 4.  Plaintiff averred that these actions constituted discrimination, and that they occurred in the context of "a hostile environment toward female managers."  *Id.*

Defendants do not address these allegations in their Motion for Summary Judgment.

10

Instead, Defendants focus solely upon Plaintiff's termination as the discrimination at issue. In her Response to the Motion for Summary Judgment, Plaintiff makes no effort to argue or address these particular allegations of her Complaint.

In any event, the Court notes that, in order to constitute discrimination, an employer's conduct must involve an adverse employment action. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-583 (6th Cir. 1992). Additionally, in order to show a hostile work environment, Plaintiff would have to show that Defendants' conduct was "sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986). In analyzing this latter issue, courts should consider "the frequency or the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.,* 510 U.S. 17, 23 (1993).

The allegations of Plaintiff's Complaint do not establish discrimination and/or a hostile work environment as a matter of law. Thus, to the extent that Plaintiff intended for these allegations to state separate claims of discrimination, Defendant is entitled to a judgment as a matter of law concerning them.

Finally, Plaintiff argues as follows in her Response:

> Further, the Defendant [*sic*] relies upon the discovery deposition of Nancy Eckert. This was not intended as substitute for the testimony of the Plaintiff. It is not customary for a Plaintiff to reveal her entire case in a discovery deposition. Hence it would be a miscarriage of justice to rely primarily upon the discovery deposition and to dismiss the case. Plaintiff requests leave of the Court to offer a more detaned [*sic*] Affidavit in support of her anticipated trial testimony. Plaintiff asks for more time as her counsel has been overwhelmed with a number of contested

11

Case 3:03-cv-00523   Document 48   Filed 10/19/06   Page 11 of 14 PageID #: 242

proceedings in the past few weeks and she and her counsel need
more time to prepare this response.

Docket Entry No. 44-1, p. 1-2.

Plaintiff apparently misunderstands fundamental aspects of the summary judgment procedure. The Federal Rules of Civil Procedure do not recognize a distinction between "discovery" depositions and "other" depositions. *See* Fed. R. Civ. P. 30, 32. Plaintiff's deposition testimony plainly qualifies as appropriate material for the Court to consider under Fed. R. Civ. P. 56(c), which specifically refers to "depositions."

Moreover, if Plaintiff had wished to file an Affidavit in response to the Motion for Summary Judgment, Plaintiff certainly did not need leave of Court to do so.[3]

Additionally, Plaintiff's statement that she needs additional time to prepare her Response is puzzling. While Plaintiff filed her Response on September 28, 2006, the Response was not actually due, under Orders of the Court, until October 16, 2006. The record shows that Defendants' Motion for Summary Judgment was filed July 14, 2006. Docket Entry No. 32. On

---

[3] If Plaintiff needed additional time to obtain an Affidavit, Plaintiff could have followed the procedures in Rule 56(f), which provides as follows:

> **(f) When Affidavits are Unavailable.** Should it appear from the affidavit of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Plaintiff, however, filed no affidavit establishing she could not "present by affidavit facts essential to justify" her opposition to the Motion for Summary Judgment.

12

August 3, 2006, Judge Campbell referred the Motion to the undersigned for a Report and Recommendation. Docket Entry No. 36. On August 8, 2006, Plaintiff filed what was essentially a Motion for additional time to respond to the Motion for Summary Judgment. Docket Entry No. 37. In that Motion, Plaintiff's counsel stated that she had never received a copy of the Motion for Summary Judgment, and that she had only learned about it when she received Judge Campbell's Order entered August 3, 2006. On August 25, 2006, the undersigned entered an Order requiring Defendants to serve a copy of the Motion and accompanying materials upon Plaintiff's counsel, certified mail, return receipt requested. Docket Entry No. 39. That Order specifically provided, "Plaintiff may have twenty (20) days from the date indicated on the return-receipt card that the material was received, in which to file a Response to the Motion for Summary Judgment." *Id.,* p. 2. The return receipt card indicates that Plaintiff received the Motion for Summary Judgment and accompanying material on September 25, 2006.[4] Docket Minute Entry dated 9/26/06. Plaintiff, therefore, had twenty (20) days from September 25, 2006, or until October 16, 2006, in which to file her Response.

Finally, Plaintiff never filed a Motion seeking additional time to respond to the Motion for Summary Judgment, at least on grounds that she needed additional time to prepare an Affidavit or on grounds that her attorney had been "overwhelmed." Plaintiff did file two Motions seeking additional time to respond (Docket Entry Nos. 38, 42), both of which were granted (Docket Entry Nos. 39, 46), but neither raised an argument that Plaintiff needed additional time to secure an Affidavit or that her counsel had been "overwhelmed."

---

[4] Defendants mailed the material to Plaintiff's counsel on August 28, 2006 (Docket Entry No. 40-2), and there is no explanation in the record concerning why Plaintiff's counsel did not receive it for almost a month.

## IV. Conclusion

For the foregoing reasons, the undersigned concludes that there is no genuine issue as to any material fact, and that Defendants are entitled to a judgment as a matter of law. Therefore, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket Entry No. 32) be GRANTED, and that this action be DISMISSED WITH PREJUDICE.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

_____
E. CLIFTON KNOWLES
United States Magistrate Judge